**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CAROLE COPPINGER-MARTIN,
              *Petitioner,*

NORDSTROM, INC.,
              *Intervenor,*

              v.

HILDA L. SOLIS, Secretary Of
Labor; UNITED STATES DEPARTMENT
OF LABOR ADMINISTRATIVE REVIEW
BOARD,
              *Respondents.*

No. 09-73725

LABR No.
07-067

OPINION

On Petition for Review of an Order of the
Department of Labor

Argued and Submitted
October 8, 2010—Seattle, Washington

Filed November 30, 2010

Before: Sidney R. Thomas and Milan D. Smith, Jr.,
Circuit Judges, and Raner C. Collins, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Raner C. Collins, United States District Judge for the
District of Arizona, sitting by designation.

## COUNSEL

Cecilia A. Cordova, Connell, Cordova, Hunger & Gautschi, PLLC, Seattle, Washington, for the petitioner.

Seema K. Patel, United States Department of Labor, Office of the Solicitor, Washington, DC, for the respondent.

Ryan P. McBride, Lane Powell, PC, Seattle, Washington, for the intervenor.

---

## OPINION

M. SMITH, Circuit Judge:

Carole Coppinger-Martin alleges that Nordstrom, Inc. violated the whistleblower-protection provision of the Sarbanes-Oxley Act of 2002 (SOX), 18 U.S.C. § 1514A, by terminating her employment in retaliation for her reporting to supervisors conduct she believed violated the rules and regulations of the Securities and Exchange Commission (SEC). She petitions for review of the final order of the United States Department of Labor's Administrative Review Board (ARB) that dismissed her complaint as untimely filed. We have jurisdiction under 18 U.S.C. § 1514A(b)(2)(A) and 49 U.S.C. § 42121(b)(4).

We conclude that the ARB properly dismissed Coppinger-Martin's complaint as untimely. We therefore deny the petition for review.

## FACTUAL AND PROCEDURAL BACKGROUND

Nordstrom hired Coppinger-Martin as Chief Technical Architect of its Business Information Systems Strategic Planning Group in May 1999. In the summer of 2005, Coppinger-Martin reported to her immediate supervisor, Dan Little, that she believed security vulnerabilities in Nordstrom's information systems exposed the company to potential SEC violations. Although Coppinger-Martin previously had received favorable work-performance reviews, she received an unfavorable evaluation shortly after she made her report. On

November 14, 2005, Little informed Coppinger-Martin that Nordstrom was eliminating her job duties and that there were no other opportunities for her in the company. Although Little originally told Coppinger-Martin that her employment with Nordstrom would end in January 2006, she continued to work for the company until April 21, 2006. On May 22, 2006, Coppinger-Martin's attorney contacted Nordstrom's general counsel to discuss her severance agreement and possible claims against Nordstrom.

Coppinger-Martin's complaint alleges that on July 19, 2006, a Nordstrom employee informed her that other employees were performing many of her former job duties. At that time, Coppinger-Martin alleges, she "for the first time realized that the elimination of her job may have been retaliatory for reporting her SEC concerns to Little and other Nordstrom senior management." In August 2006, another Nordstrom employee confirmed to Coppinger-Martin that other employees were performing her former job duties.

On October 13, 2006, Coppinger-Martin filed a whistle-blower action under SOX with the Occupational Safety and Health Administration (OSHA), alleging that Nordstrom had terminated her employment in retaliation for reporting the potential SEC violations. OSHA denied her relief, and in January 2007, Coppinger-Martin requested a hearing before an Administrative Law Judge (ALJ).

In March 2007, Nordstrom moved to dismiss Coppinger-Martin's complaint as untimely. The complaint claimed that the 90-day statute of limitations for filing her complaint began to run on July 19, 2006, the date Coppinger-Martin first learned that her duties had not been eliminated. Nordstrom argued, however, that the statute of limitation began to run in mid-November 2005, when Nordstrom informed Coppinger-Martin that she was being terminated, or, in the alternative, on April 21, 2006, her last day of employment. In either case, Nordstrom contended, her October 13, 2006, complaint was

untimely filed. In response, Coppinger-Martin argued that Nordstrom's misrepresentation or concealment of facts regarding the alleged retaliatory motivation for her termination tolled the accrual date of her claim.

The ALJ granted Nordstrom's motion to dismiss the complaint, and Coppinger-Martin petitioned for review with the ARB. The ARB ordered the complaint dismissed, concluding that the record supported the ALJ's finding that the complaint was untimely filed, and that Coppinger-Martin had not established that she was entitled to equitable tolling or equitable estoppel. Coppinger-Martin timely petitioned for review.

Our review of the ARB's decision is governed by the standard established in the Administrative Procedure Act, 5 U.S.C. § 706. *See* 49 U.S.C. § 42121(b)(4)(A); 18 U.S.C. § 1514A(b)(2)(A) (adopting the rules and procedures set out in 49 U.S.C. § 42121(b)). Under that standard, we will reverse an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## DISCUSSION

### 1. Claim Accrual Under the Sarbanes-Oxley Act of 2002

[1] SOX grants "whistleblower" protection to employees of publicly-traded companies by prohibiting employers from retaliating against employees for reporting certain potentially unlawful conduct. 18 U.S.C. § 1514A. The whistleblower-protection provision provides, in relevant part:

> No [publicly-traded company], or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the

> employee . . . to provide information . . . regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the [SEC], or any provision of Federal law relating to fraud against shareholders, when the information . . . is provided to . . . a person with supervisory authority over the employee . . . .

*Id.* § 1514A(a)(1)(C).

**[2]** A plaintiff seeking whistleblower protection under SOX must first file an administrative complaint with OSHA, *see* 29 C.F.R. § 1980.103(c), "not later than 90 days after the date on which the violation occurs," 18 U.S.C. § 1514A(b)(2)(D); *see also* 29 C.F.R. § 1980.103(d). The violation occurs "when the discriminatory decision has been both made and communicated to the complainant." 29 C.F.R. § 1980.103(d). We commence our analysis by considering whether the discriminatory decision was made and communicated to Coppinger-Martin when she learned that her employment was being terminated, or when she learned that other employees had continued to perform her former duties.

**[3]** We have previously held, in the context of civil rights claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, that a plaintiff's claim accrues when the plaintiff learns of the "actual injury," i.e., an adverse employment action, and not when the plaintiff suspects a "legal wrong," i.e., that the employer acted with a discriminatory intent. *Lukovsky v. City & Cnty. of S.F.*, 535 F.3d 1044, 1049-51 (9th Cir. 2008), *cert. denied sub nom.*, *Zolotarev v. City & Cnty. of S.F.*, 129 S. Ct. 1997 (2009). Our sister circuits agree, in a variety of employment discrimination contexts, that a claim accrues when a plaintiff discovers the injury rather than the legal wrong.[1]

---

[1]*See, e.g.*, *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001) (Title VII and Age Discrimination in Employment Act (ADEA)); *Thelen*

**[4]** Coppinger-Martin's claim similarly accrued, and the statute of limitations began to run, when she learned of the actual injury, i.e., that Nordstrom had decided to terminate her employment. Although Little originally told Coppinger-Martin that her employment with Nordstrom would end earlier, she continued to work for the company until April 21, 2006. Even if the decision to terminate her employment was initially unclear, it was unquestionably communicated to her by her final day of work. Nevertheless, Coppinger-Martin filed her complaint on October 13, 2006, more than 90 days after her final day of work. Therefore, unless the date of accrual was tolled, her complaint was filed untimely.

## 2.  Equitable Tolling

**[5]** Coppinger-Martin contends that equitable tolling should extend the filing period because she was not aware of Nordstrom's retaliatory motive until July 19, 2006, when she learned that other Nordstrom employees were performing many of her former job duties. "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Equitable tolling does not depend on the defendant's wrongful conduct; rather, it focuses on whether the plaintiff's delay was excusable. *Id.* "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Id.*

---

*v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995) (ADEA); *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995) (ADEA); *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558-59 (10th Cir. 1994) (ADEA); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994) (Title VII); *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (Title VII).

**[6]** Coppinger-Martin's equitable tolling argument fails for two reasons. First, Coppinger-Martin is charged with constructive knowledge of the law's requirements once she retained counsel. "[O]nce a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements." *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997) (internal quotation marks and citation omitted). Shortly after her termination, Coppinger-Martin hired an attorney, and her attorney contacted Nordstrom's general counsel on May 22, 2006, to discuss her severance agreement and possible claims against Nordstrom. Thus, even if equitable tolling could be properly applied, it would have ceased by May 22, 2006, at the latest.

**[7]** Second, under the burden-shifting framework of the SOX whistleblower-protection provision, Coppinger-Martin had sufficient information to make out a prima facie case by April 21, 2006, when the decision to terminate her employment had unquestionably been made and communicated to her. "Equitable tolling may not be invoked by a[ ] . . . plaintiff who, within the limitations period, has sufficient information to know of the possible existence of a claim." *Santa Maria*, 202 F.3d at 1179.

To make a prima facie showing under the whistleblower-protection provision of SOX, an employee's complaint must allege that (1) the employee engaged in protected activity; (2) the employer knew, actually or constructively, of the protected activity; (3) the employee suffered an unfavorable personnel action; and (4) the circumstances raise an inference that the protected activity was a contributing factor in the personnel action. 29 C.F.R. § 1980.104(b)(1). If the employee makes a prima facie showing, the burden shifts to the employer to rebut the employee's prima facie case by demonstrating by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity. *See* 49 U.S.C. § 42121(b)(2)(B)(ii); 18

U.S.C. § 1514A(b)(2)(C) (adopting the burdens of proof set out in 49 U.S.C. § 42121(b)).

**[8]** To the extent Coppinger-Martin argues that she needed additional proof of Nordstrom's motivation in terminating her employment, her argument fails. A prima facie case does not require that the employee conclusively demonstrate the employer's retaliatory motive. *See, e.g.*, *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 546 n.11 (9th Cir. 1982) (distinguishing between prima facie and conclusive proof of discriminatory intent). Rather, the employee need only make "a prima facie showing that protected behavior or conduct was a contributing factor in the unfavorable personnel action alleged in the complaint." 29 C.F.R. § 1980.104(b).

**[9]** Coppinger-Martin's complaint contains allegations that satisfy her required prima facie showing for a SOX claim. Specifically:

> [T]he circumstances surrounding her termination raise the inference that her protected activity was at the very least a contributing factor in the decision to terminate her—the timing of notice of her termination after engaging in the protected activity and the dramatic change in her good evaluations before engaging in her protected activity compared to her unfavorable evaluation after engaging in the protected activity followed by her termination of employment from the Company.

Coppinger-Martin had notice by the time of the adverse employment action, that is, by April 21, 2006, at the latest, as to the underlying facts of each allegation of her complaint, including the timing of the notice of her termination and her poor work-performance evaluations. Equitable tolling therefore does not extend the accrual period for the filing of her complaint.

### 3.  Equitable Estoppel

**[10]** Coppinger-Martin also contends that equitable estoppel should prevent Nordstrom from asserting a statute of limitations defense because Nordstrom fraudulently concealed its motive in terminating her employment. "Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit . . . ." *Santa Maria*, 202 F.3d at 1176. Equitable estoppel may be invoked "if the defendant takes active steps to prevent the plaintiff from suing in time," *id.* at 1176 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)), such as by misrepresenting or concealing facts necessary to the discrimination claim, *id.* at 1177. Equitable estoppel is also sometimes referred to as "fraudulent concealment." *Id.* at 1176; *Guerrero v. Gates*, 442 F.3d 697, 706 (9th Cir. 2006).

**[11]** Coppinger-Martin's equitable estoppel argument fails because her "alleged basis for equitable estoppel is the same as [her] cause of action." *Lukovsky*, 535 F.3d at 1052. "As we have previously explained, the plaintiff must point to some fraudulent concealment, some active conduct by the defendant '*above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.' " *Id.* (quoting *Guerrero*, 442 F.3d at 706) (emphasis in *Lukovsky*).

In *Lukovsky v. City & County of San Francisco*, we rejected a nearly-identical argument on the ground that the plaintiffs had failed to allege any fraudulent concealment or misrepresentation beyond the actual basis for the lawsuit. *Id.* Specifically, in *Lukovsky*, the plaintiffs contended that the defendants had concealed their discriminatory motive in failing to hire them and in giving preferential treatment to unqualified Asian and Filipino applicants. *Id.* at 1047. We held that equitable estoppel did not apply, and quoted the Seventh Circuit's reasoning with approval :

> If [defendant] had told [plaintiff] that it would not plead the statute of limitations as a defense to any

> suit for age discrimination that he might bring, this would be a case for equitable estoppel; so also if [defendant] had presented [plaintiff] with forged documents purporting to negate any basis for supposing that [plaintiff's] termination was related to his age. [Plaintiff] tries to bring himself within the doctrine by contending that [stated reason for termination] was a ruse to conceal the plan to fire him because of his age. This merges the substantive wrong with the tolling doctrine. . . . It implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, "We're firing you because of your age." It would eliminate the statute of limitations . . . .

*Id.* at 1052 (alterations in original) (quoting *Cada*, 920 F.2d at 451). We also noted that the plaintiffs "do not point to any misrepresentation by the Defendants that concealed the composition of the applicant pool, the qualifications of those actually hired, or any promise by which the Defendants discouraged plaintiffs from timely asserting their rights." *Id.*

[12] Similarly, Coppinger-Martin's attempt to invoke equitable estoppel "merges the substantive wrong with the tolling doctrine." *Cada*, 920 F.2d at 451. Coppinger-Martin does not allege that Nordstrom hid evidence, promised not to plead the statute of limitations, or otherwise engaged in some misconduct separate from her claim for retaliatory discharge. She argues only that Nordstrom failed to reveal its retaliatory motive, the very conduct upon which her claim is founded. Because Nordstrom's alleged misrepresentation did not preclude her from knowing or discovering the requisite elements of her prima facie case, equitable estoppel does not provide relief to Coppinger-Martin.

## CONCLUSION

We hold that the ARB did not err in dismissing Coppinger-Martin's complaint as untimely filed.

**PETITION FOR REVIEW DENIED.**